UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
REBECCA ROBLES,                                       **COMPLAINT**

                                                                  **15 CV 2584 (DLC)**
                                                                  **ECF Case**

                 Plaintiff,
    vs.

The CITY OF NEW YORK,
NEW YORK POLICE OFFICERS
STEVEN LICHTIG, Shield 5508, JOHN DOE,
JANE DOE, EMERGENCY MEDICAL SERVICES
TECHNICIANS JOHN DOE and JANE DOE,
in their individual and official capacities,                **JURY TRIAL DEMANDED**

                 Defendants.
-----------------------------------------------------------x

Plaintiff Rebecca Robles, by her attorney, Cyrus Joubin, complaining of the Defendants, respectfully alleges as follows:

## **PRELIMINARY STATEMENT**

1. This civil rights action arises from the illegal and violent detention of Rebecca Robles ("Plaintiff") at the hands of New York City Police Department Officers and Fire Department EMS Technicians ("the individual defendants") who entered Plaintiff's apartment based on an inaccurate report that Plaintiff posed a danger to herself, and despite seeing that Plaintiff clearly was not a danger to herself, they treated her as a prisoner in her own home and forcibly, violently took her to a hospital. Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983") against the individual defendants for false arrest and imprisonment, excessive force, and failure to intervene, and a *Monell* claim against the City of New York for the same constitutional violations. Additionally, Plaintiff asserts analogous claims under New York Law against

1

the individual defendants, and against the City of New York under the doctrine of *respondeat superior*. Plaintiff seeks compensatory and punitive damages, costs, disbursements, and attorney's fees pursuant to applicable state and federal civil rights law.

## **JURISDICTION**

2. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth Amendment to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

3. Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all state law claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy which gives rise to the federally based claims and causes of action.

## **VENUE**

4. Venue is proper in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

## **JURY DEMAND**

5. Plaintiff respectfully demands a trial by jury on each and every one of her claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## **PARTIES**

6. Plaintiff Rebecca Robles is a 52-year-old woman, a United States citizen with no contacts with the criminal justice system, and at all relevant times a resident of the City of New York, State of New York.

7. The individually named defendants Police Officer Steven Lichtig (Shield # 5508) ("PO Lichtig"), Police Officer John Doe ("PO John Doe"), and Police Officer Jane Doe ("PO Jane Doe"), are and were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD") who, on the date of the incident giving rise to this complaint, were assigned to the NYPD 45th Precinct.

8. The individually named defendants Emergency Medical Technician John Doe ("EMT John Doe") and Emergency Medical Technician Jane Doe ("EMT Jane Doe") are and were at all times relevant herein technicians, employees and agents of the New York City Fire Department ("FDNY") Bureau of Emergency Medical Services ("EMS").

9. Each individual defendant is sued in his individual and official capacity. At all times mentioned herein, each individual defendant acted under the color of state law, in the capacity of an officer, employee, and agent of defendant City of New York ("Defendant City").

10. Defendant City is a municipality created and authorized under the laws of New York State. It is authorized by law to maintain, direct, and to supervise the NYPD and FDNY, for which it is ultimately responsible.

## NOTICE OF CLAIM

11. Plaintiff served a Notice of Claim on the Comptroller of the City of New York within ninety days of the incident, being assigned Claim # 2014PI023854. At least 30

days have elapsed since the service of the Notice of Claim, and adjustment and payment has been neglected or refused.

12. The City of New York demanded a hearing pursuant to General Municipal Law § 50-h, which hearing was held on October 8, 2014.

13. This action has been commenced within one year and ninety days after the occurrence of the event upon which the claims are based.

## STATEMENT OF FACTS

14. On the evening of Saturday May 31, 2014, Plaintiff was in her apartment at 120 Dekruif Place ("the Apartment") in Bronx, New York. Plaintiff's brother-in-law, Juan Gonzalez ("Mr. Gonzalez"), also resides there and was in the Apartment.

15. Around 7 PM that night, Plaintiff received a text message on her cell phone from a member of her church, Carmen Valencia ("Ms. Valencia"). Ms. Valencia's message included a photograph of Plaintiff – a lovely photograph taken during happier times a few years ago, and it made Plaintiff feel nostalgic.

16. Plaintiff replied to Ms. Valencia via text message ("the Text") that she appreciated the photograph but that it made her feel sad because these days her son was spending much more time with his father (her ex-husband) than with her. The Text then ended with an expression from Plaintiff's mother: "So just get the gun and shoot me."

17. Ms. Valencia became worried, for she could not decipher the irony in that expression, but instead of contacting Plaintiff to clarify or calm Plaintiff's feelings, Ms. Valencia called the pastor of the church, Alvin Torres ("Mr. Torres"). Mr. Torres, in turn, called 911 and reported that Plaintiff wanted to hurt herself.

18.     After sending her text message to Ms. Valencia, Plaintiff took a bath, took a sleeping pill, and prepared to go to bed.  There were no further text messages or voice messages of any kind on Plaintiff's cell phone that evening.

19.     Around 9:30 PM, Plaintiff went to bed.  She woke up around 11:45 PM feeling thirsty.  Plaintiff got out of bed and walked to the kitchen to get a glass of tap water.  Mr. Gonzales was in the kitchen cooking some Dominican food.

20.     While in the kitchen, Plaintiff heard her doorbell ring.  She opened the Apartment door and saw EMT John Doe and EMT Jane Doe, who promptly walked in the Apartment without Plaintiff's permission.

21.     EMT John Doe and EMT Jane Doe explained that Plaintiff's pastor had called the police and stated that Plaintiff was trying to hurt herself, and therefore Plaintiff had to be taken to the hospital.

22.     Plaintiff was shocked by the unverified exaggeration that she was some sort of danger to herself.  Plaintiff told the EMTs that she did not want to hurt herself, she was sleeping, getting some water, and simply wanted to go back to sleep.  She did not need to go the hospital but the EMTs would not leave.

23.     Wondering why the pastor, if he was so concerned, didn't try contacting her, Plaintiff called Mr. Torres to express her frustration over his rash conduct, his outsourcing of his concern to strangers, who were now inside her home:  "How could you do that?  Why didn't you come check on me?  - you live eight minutes away!"

24.     Plaintiff's conduct and appearance in the presence of EMT John Doe and EMT Jane Doe demonstrated the truth – that Plaintiff had been sleeping and simply wanted to go back to bed.  Mr. Gonzalez, speaking Spanish to one of the EMTs who also

spoke Spanish, said that Plaintiff had done nothing unusual or dangerous, further demonstrating that the pastor's alarm was misplaced.

25. The EMTs refused to leave, however, despite the numerous signs that Plaintiff was fine. EMT John Doe and EMT Jane Doe, confused by their jobs and duties that evening, untrained and ill-equipped, were frustrated that Plaintiff would not simply go with them to the hospital; they felt she was making their job difficult by virtue of asserting her right to remain inside her home.

26. Because Plaintiff refused to go to the hospital, EMT John Doe and EMT Jane Doe called the NYPD, who dispatched three NYPD officers to the Apartment, namely, PO Lichtig, PO John Doe, and PO Jane Doe.

27. When PO Lichtig, PO John Doe, and PO Jane Doe arrived in the Apartment, around 12:15 AM on June 1, 2014, they immediately demanded that Plaintiff go with them, not caring to ascertain Plaintiff's condition, indifferent to her liberty and deaf to her clear explanations.

28. Plaintiff continued to express her desire to remain free and to sleep in her bed, and she refused to consent to leave the Apartment, clearly signaling to all the individual defendants that she was not trying to "shoot" or kill herself.

29. Shocked and frightened by the strangers in her home – alert to an ominous threat to her security – Plaintiff firmly resisted the idea of going to the hospital, plausibly insisting that she was fine and in no danger to herself or others, rationally asserting her right to remain free within her home, lucidly displaying a desire for liberty and dignity that a person bent on suicide does not exhibit.

30. It should have been crystal clear to all the individual defendants that the report of a suicidal individual was either a prank or an unfounded, uneducated exaggeration.

31. As Plaintiff sat at her dining room table, trying to persuade the individual defendants to leave her in peace, her mouth was becoming increasingly dry (due to a medical condition) and she had trouble speaking. Plaintiff stood up to get some water. This being her home, she thought she had that right.

32. But once Plaintiff stood up to get water, PO Jane Doe grabbed Plaintiff, squeezed her arms around Plaintiff's neck, clenched tight and pushed Plaintiff to the ground, causing Plaintiff's head to slam on the ground.

33. The other individual defendants jumped in, adding their weight, and Plaintiff's right leg became crushed and twisted beneath all the bodies, causing Plaintiff to scream in pain.

34. Plaintiff, nearly frozen on the floor in shock and pain, was dragged across her Apartment and handcuffed behind her back.

35. The individual defendants then put Plaintiff on an aluminum medical lift, resembling a foldable seat, and strapped her to it while she was still handcuffed behind her back.

36. Plaintiff was forcibly taken to an ambulance outside, where an oxygen mask was tied to her face. She was driven to a psychiatric facility in Montefiore Hospital ("the Hospital") in the Bronx, 1825 Eastchester Road, where she remained for about ten hours.

37. In the Hospital, Plaintiff received X-rays of her hands and wrists, which were swollen and heavily bruised.

38. In the morning hours of June 1, 2014, psychiatrists at the Hospital spoke to Plaintiff and believed her when she stated, as she had all along, that she did not want to harm herself.  The doctors found that while Plaintiff had anxiety, depression, and poor coping skills, she posed no danger to others or herself, and they therefore allowed her to be discharged from the Hospital.

39. The NYPD failed to supervise and discipline the individual defendants despite their histories of malicious and abusive behavior, ignoring the risk that they would engage in future misconduct, thereby encouraging them to continue to abuse their powers and violate the rights of civilians.

40. The NYPD lacks a clear and logical policy when it comes to dealing with people who are said to pose a harm to themselves.  This is part of a greater failure by the NYPD to address mental health issues – or alleged mental health issues – in a sensitive and meaningful way.  The ramshackle, threadbare, and improvisational customs and policies of dealing with people with reported mental health issues – such as suicidal impulses –leads to the false and unjust detention of ordinary citizens who in fact pose no danger to themselves or others.

41. The FDNY, in supervising and training Emergency Medical Technicians from the Bureau of EMS, has failed to teach the basic principle of distinguishing between rumor and fact, between a report of danger and actual danger.  The FDNY policy of having EMTs automatically, without proper questioning and examination, hospitalize people who are merely reported to be suicidal leads to the false and unjust detention of ordinary citizens who in fact pose no danger to themselves or others.

42. As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

   a. Violation of her constitutional rights under the Fourth Amendment to the United States Constitution;

   b. Severe emotional trauma, distress, degradation, and suffering.

## SECTION 1983 CLAIMS

## FIRST CLAIM

## Deprivation of Federal Civil Rights Under Section 1983

43. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

44. All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

45. All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

46. The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of her constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment of the United States Constitution.

47. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SECOND CLAIM

## False Arrest Under Section 1983

48. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

49. By the actions described above, Defendants deprived Plaintiff of her federal civil rights, including her Fourth Amendment right to be secure in her person against unreasonable searches and seizures, specifically her right to be free of false arrest.

50. As detailed above, the individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, without privilege or consent.

51. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

### THIRD CLAIM

### Excessive Force Under Section 1983

52. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

53. By the actions described, the individual defendants deprived Plaintiff of her Fourth Amendment right to be free of unreasonable or unwarranted restraints on personal liberty, specifically her right to be free from excessive and unreasonable force.

54. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

### FOURTH CLAIM

### Failure to Intervene Under Section 1983

55. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

56. Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of her constitutional rights by other law enforcement officers.

57. The individual defendants failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of his constitutional rights despite knowing about such violations and having had a realistic opportunity to do so.

58. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged .

## FIFTH CLAIM

### Municipal Liability Under Section 1983

59. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

60. By the actions described, the Defendant City deprived Plaintiff of her Fourth Amendment right to be free of false arrest, excessive force, and illegal abuse through its failure to train, supervise, and discipline mendacious and malicious officers; and through its failing to meaningfully train NYPD officers and EMS technicians in dealing with people with reported mental illness, such that those who wield considerable power over the lives of everyday citizens can arbitrarily exercise and abuse that power over non-dangerous individuals.

61. As a direct and proximate result of the acts of Defendant City, Plaintiff sustained the other damages and injuries hereinbefore alleged.

## PENDENT STATE CLAIMS

11

## FIRST CLAIM

### False Imprisonment under N.Y. State Law

62. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

63. The individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, and without privilege or consent.

64. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged .

## SECOND CLAIM

### Battery Under N.Y. State Law

65. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

66. As detailed above, the individual defendants intentionally touched Plaintiff in an offensive and harmful manner, and they intentionally subjected her to offensive and harmful contact.

67. As a direct and proximate result, Plaintiff sustained the damages and injuries hereinbefore alleged.

## THIRD CLAIM

### Negligent Hiring/Training/Retention of Employment Services Under N.Y. State Law
### (Against Defendant City of New York)

68. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

69. Defendant City owed a duty of care to Plaintiff to prevent the false arrest and mental and emotional abuse sustained by Plaintiff.

70. Upon information and belief, all of the individual defendants were unfit and incompetent for their positions.

71. Defendant City knew or should have known through the exercise of reasonable diligence that the individual defendants could potentially cause harm.

72. Defendant City's negligence in hiring, screening, training, disciplining and retaining the individual defendants proximately caused Plaintiff's injuries.

73. As a result of its negligent conduct, Defendant City has directly and proximately caused the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

### Respondeat Superior Under N.Y. State Law

74. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

75. Defendant City is the employer of the individual defendants.

76. Under the doctrine of *respondeat superior*, the Defendant City is responsible for the wrongdoing of its employees acting within the scope of their employment – in this case, the battery and false imprisonment committed by the individual defendants against Plaintiff.

77. As a direct and proximate result of the acts of the individual defendants detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

    a.    An order awarding compensatory damages for Plaintiff Rebecca Robles in an amount to be determined at trial;

    b.    An order awarding punitive damages in an amount to be determined at trial;

    c.    A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

    d.    Such other and further relief as this Court may deem appropriate.

DATED:    April 2, 2015  
              New York, New York

_____s/_____  
CYRUS JOUBIN, ESQ.  
88 Pine Street, 14th Floor  
New York, NY 10005  
(703) 851-2467  
joubinlaw@gmail.com  
Attorney for Rebecca Robles